## UNITED STATES COURT OF APPEALS
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

_____

| | |
|---|---|
| **SUNCOKE ENERGY, INC.,** ) | |
| ) | |
| *Petitioner* ) | |
| ) | |
| v. ) | **No. 24-1288** |
| ) | **(consolidated with** |
| ) | **lead case No. 24-** |
| ) | **1287)** |
| **UNITED STATES ENVIRONMENTAL** ) | |
| **PROTECTION AGENCY,** ) | |
| ) | |
| *Respondent.* ) | |

_____)

## <u>MOTION TO INTERVENE OF REVISE AS NECESSARY COALITION</u>

Pursuant to Fed. R. App. P. 15(d) and Circuit Rules 15(b) and 27, and

for the reasons set forth below, the Revise As Necessary Coalition (RANC)

moves to intervene on behalf of the petitioner in the above-captioned case.

The undersigned counsel has contacted counsel for the parties to Case No. 24-

1288 and consolidated cases to determine their position on this motion to

intervene.  Petitioners SunCoke Energy, American Coke and Coal Chemicals

Institute, and Coke Oven Environmental Task Force ("Industry Petitioners")

consent to RANC's intervention.  Respondents and Petitioners GASP, Clean

Air Council, Hoosier Environmental Counsel, Just Transition Northwest Indiana, PANIC, PennFuture, and Sierra Club ("Environmental Group Petitioners") do not take a position on RANC's motion to intervene at this time, but they reserve their right to oppose intervention once they have seen this motion.

## I. <u>INTRODUCTION</u>

RANC moves to intervene on the side of petitioner SunCoke Energy, Inc. ("SunCoke") in its petition for review, pursuant to section 307(b)(1) of the Clean Air Act ("CAA"), 42 U.S.C. § 7607(b)(1), of an EPA action that imposed more-stringent hazardous air pollutant emission standards on coke oven pushing, quenching, and battery stacks and on coke oven batteries, as a result of the periodic review of existing emission standards required by CAA § 112(d)(6), 42 U.S.C. § 7412(d)(6).  A key issue for judicial review of that EPA action is whether EPA correctly interpreted the CAA to require EPA to impose new, more stringent emission limitations even where the existing standards assure protection of human health with an ample margin of safety, where no new or different emission control technology is available, or where the new standards impose excessive costs while producing little regulatory benefit.

Because the manufacturers that RANC members represent currently face or will soon face additional and more stringent emission standards resulting from EPA's interpretation of its obligations and discretion under CAA § 112(d)(6), these manufacturers have a strong interest in this Court's review of EPA's interpretation of CAA § 112(d)(6) and its implementation. Petitioner SunCoke and other Industry Petitioners object to many specific aspects of the new emission standards for coke ovens and cannot be relied upon to present RANC's position on the meaning of CAA § 112(d)(6) in the same manner and with the same attention as RANC. RANC therefore is entitled to intervene to protect the interests of its members presented by this Court's review of EPA's interpretation of CAA § 112(d)(6), expressed in the Coke Oven final rule.

## II.   BACKGROUND

### A.   The Clean Air Act and the Challenged EPA Action

Since the Clean Air Act was amended in 1990, EPA has followed a series of steps, mandated by CAA § 112, 42 U.S.C. § 7412, to establish emission standards for categories of sources of hazardous air pollutants.

"In the first round of regulation, the agency [is] obliged to look to the best available control technology to control emissions for each category of major sources that emits one or more of the listed hazardous air pollutants. [42 U.S.C.]

§ 7412(d)(2)-(3).  (The control technology used to meet this standard is referred to as the "maximum achievable control technology" or "MACT.")."  *Natural Resources Defense Council v. EPA*, 529 F.3d 1077, 1079 (D.C. Cir. 2008) (cleaned up).  For existing sources, the MACT standards must be at least as stringent as the emissions control level achieved by the best-performing sources, known as the "MACT floor."  *Id.*; *Chesapeake Climate Action Network v. EPA*, 952 F.3d 310, 313 (D.C. Cir. 2020); see also 88 Fed. Reg. 78,692, 78,695. (Nov. 16, 2023).

"In the second stage of regulation, EPA [is] obliged to review any residual health risks that had not been eliminated by the initial technology-based standards. *Id.* § 7412(f). This second stage is described as "risk-based" or "health-based" because it requires EPA to set a standard based on a medical assessment of a given pollutant's health risks … rather than the current state of control technology."  529 F.3d at 1080.  EPA typically refers to this as the "residual risk review" step.  *See*, *e.g*., 88 Fed. Reg. at 78,695.

The third step is found in CAA § 112(d)(6), which directs that the "Administrator shall review, and revise as necessary (taking into account developments in practices, processes, and control technologies), emission standards promulgated under this section no less often than every 8 years."  This

is sometimes referred to as the "technology review."  *See*, *e.g*., 88 Fed. Reg. at 78,695.

In 2020, this Court rejected EPA's position that CAA § 112(d)(6) only requires EPA to review the specific emission limitations it included in the original MACT standards, telling EPA that the periodic technology reviews under section 112(d)(6) must also address all hazardous air pollutants that the source is known to emit but that are unregulated under the existing standards. *Louisiana Environmental Action Network v. EPA*, 955 F.3d 1088 (D.C. Cir. 2020) ("*LEAN*").  As a result of that decision, and at the urging of environmental advocacy groups including petitioner Sierra Club, EPA began reviewing emission standards for some source categories even before the eight-year deadline for periodic CAA § 112(d)(6) reviews, to consider whether the applicable emission standards should include additional limitations on hazardous air pollutant emissions not previously addressed.  *See*, *e.g*., 88 Fed. Reg. at 78,695 (2023 proposal arising from CAA § 112(d)(6) review of emission standards already reviewed in 2020).

The instant case concerns a final action by EPA published July 5, 2024, resulting from EPA's CAA § 112(d)(6) review of emission standards for two source categories: Coke Ovens: Pushing, Quenching, and Battery Stacks, and Coke Oven Batteries.  89 Fed. Reg. 55,684 (the "Coke Oven final rule" or the

"final rule").  In the preamble to the final rule, EPA rejected industry comments that imposing additional and more stringent limitations is not necessary and would impose large costs to reduce emissions that already present minimal risk. EPA justified its actions based on its interpretation of EPA's obligations and discretion when implementing CAA § 112(d)(6)'s requirement to periodically review, and revise as necessary, existing emission standards.  89 Fed. Reg. at 55,709, 55,711.  EPA asserted that it need not consider low residual risk when determining whether to revise existing emission standards, and that it cannot do so when setting a MACT standard "to fill regulatory gaps."  *Id*. at 55,709.  EPA claimed the CAA does not allow EPA to consider costs when establishing "MACT floor" standards as part of a CAA § 112(d)(6) review.  89 Fed. Reg. at 55,709.  Without explanation, EPA asserted that the mandate of section 112(d)(6) to "review, and revise as necessary (taking into account developments in practices, processes, and control technologies), emission standards promulgated under this section no less often than every 8 years" does nothing to alter the considerations that EPA would have applied if it were first adopting the initial MACT standards for a source category.  89 Fed. Reg. at 55,709.

SunCoke petitioned for judicial review of the Coke Oven final rule, pursuant to CAA § 307(b)(1), 42 U.S.C. § 7607(b)(1).  Its petition for review was consolidated with that of American Coke and Coal Chemicals Institute and

Coke Oven Environmental Task Force, under lead docket 24-1287, by the

Clerk's order of September 3, 2024 (Doc. #2072899).[1]

### B.    Interests of Intervenor-Applicant

Intervenor-Applicant RANC is an *ad hoc*, informal organization of trade

associations, formed to fund and guide litigation concerning regulation under the

CAA of hazardous air pollutant emissions from stationary sources, through the

periodic "technology review" required by CAA § 112(d)(6).  The manufacturing

facilities represented by members of RANC are subject to MACT standards that

EPA already reviewed and revised once pursuant to CAA § 112(d)(6) and that

EPA is in the process of reviewing again under section 112(d)(6), as a result of,

or with consideration of, the *LEAN* decision, 955 F.3d 1088.[2]  The revised

emission standards can, under CAA § 112(d)(6) as currently interpreted by EPA,

---

[1] Under Cir. Rule 15(b), an order granting this motion would have the effect of granting intervention in all cases involving the Coke Oven final rule.

[2] *See, e.g*., proposed revised emission standards for Rubber Tire Manufacturing, applicable to tire plants represented by RANC member U.S. Tire Manufacturers Association, 88 Fed. Reg. 78,692, 78,694-95 (Nov. 16, 2023); proposed revised emission standards for Plywood and Composite Wood Products mills represented by RANC member American Wood Council, 88 Fed. Reg. 31,856, 31,858-59 (May 18, 2023); *LEAN*, 955 F.3d 1088 (remanding initial EPA rule resulting from CAA § 112(d)(6) review of MACT standards for pulp mill combustion sources (represented by RANC member American Forest & Paper Association) so that EPA can address additional pollutants emitted by those sources).

impose costs of hundreds of millions of dollars on those manufacturing facilities.[3]

Thus, the manufacturing facilities that RANC members represent have a very large economic interest in the question of what factors CAA § 112(d)(6) requires or allows EPA to consider when deciding whether it is necessary to revise existing emission standards and, if so, what the revised emission standards should require.[4]  For that reason, members of RANC have been actively advocating, both formally and informally, for EPA to adopt a flexible, pragmatic approach to interpreting and implementing CAA

---

[3] *See*, *e.g*., 88 Fed. Reg. at 78,705 (EPA projects incremental capital cost for proposed revised emission standards for Rubber Tire Manufacturing of $101.8 million); 88 Fed. Reg. at 31,882 (projected incremental capital cost for wood products plants of $126 million).  *See also* 89 Fed. Reg. at 55,723 (new emission standards for facilities subject to the Coke Oven final rule projected to cost $4 million per year just for source testing).

[4] There is both a direct economic interest – in the form of costs incurred to install, operate, monitor, and maintain pollution control equipment – and indirect economic effects of being subject to additional and more stringent emission limitations, such as decreased operational flexibility to adjust to market conditions, new products, downtime or replacement of equipment, and the like; and decreased domestic or international competitiveness compared to products whose manufacturers are not subject to such stringent and costly emission standards.

§ 112(d)(6) … contrary to the approach EPA took in the Coke Oven final

rule, as explained in Section II.A., *supra*.[5]

## III.   <u>ARGUMENT</u>

Intervention in petition for review proceedings in this Court is

governed by Federal Rule of Appellate Procedure 15(d), which provides that

a motion for leave to intervene "must be filed within 30 days after the petition

for review is filed and must contain a concise statement of the interest of the

moving party and the grounds for intervention."  Fed. R. App. P. 15(d).  This

rule "simply requires the intervenor to file a motion setting forth its interest

and the grounds on which intervention is sought."  *Synovus Fin. Corp. v. Bd.*

*of Governors of Fed. Reserve Sys.*, 952 F.2d 426, 433 (D.C. Cir. 1991).

While not binding, when considering intervention under Fed. R. App.

P. 15(d), courts often look to the policies embodied in Rule 24 of the Federal

---

[5] *See*, *e.g*., U.S. Tire Manufacturers Association's January 16, 2024 comments on proposed revised emission standards pursuant to CAA § 112(d)(6) for the Rubber Tire Manufacturing source category proposed Nov. 16, 2023, 88 Fed. Reg. 78,692 (available at https://www.regulations.gov/comment/EPA-HQ-OAR-2019-0392-0139) at 17-21; American Wood Council, et al.'s July 18, 2023 comments on May 18, 2023 proposal in part to revise existing emission standards for the Plywood and Composite Wood Products Source Category pursuant to CAA § 112(d)(6), 88 Fed. Reg. 31,856 (available at https://www.regulations.gov/comment/EPA-HQ-OAR-2016-0243-0511), at 9-16.

Rules of Civil Procedure.  *See, e.g., AFL-CIO v. Scofield*, 382 U.S. 205, 216 (1965); *Amalgamated Transit Union Int'l v. Donovan*, 771 F.2d 1551, 1553 n.3 (D.C. Cir. 1985).  Intervention under Fed. R. Civ. P. 24(a)(2) must be granted when four requirements are established: (1) the application for intervention is timely; (2) the applicant claims an interest relating to the subject of the action; (3) the applicant is so situated that the disposition of the action may, as a practical matter, impair or impede its ability to protect that interest; and (4) existing parties to the case may not adequately represent the applicant's interest.  *See, e.g., The Fund for Animals, Inc. v. Norton*, 322 F.3d 728, 731 (D.C. Cir. 2003) ("*Fund for Animals*").  For the reasons set forth below, RANC satisfies these requirements.

## A.   RANC's Motion To Intervene Is Timely.

Fed. R. App. P. 15(d) requires that a motion for leave to intervene be filed within 30 days after the petition for review was filed.  The petition for review in this case was filed on September 3, 2024, and this Motion to Intervene is being filed within 30 days thereafter.  Under the Clerk's September 4, 2024, scheduling order (Doc. # 2072899), Petitioner SunCoke was not even required to file its Docketing Statement and Statement of Issues until today.  Clearly this case is at the very earliest stages, and this motion will not cause any delay prejudicial to the original parties.  *See Natural*

*Resources Defense Council v. Costle*, 561 F.2d 904, 907-908 (D.C. Cir. 1977)

(*"NRDC"*); *Ala. Power Co. v. I.C.C.*, 852 F.2d 1361, 1367 (D.C. Cir. 1988).

**B.    RANC Possesses an Interest Related to the Subject of the Pending Action.**

An intervenor must demonstrate an interest relating to the outcome of the proceeding that may be otherwise impaired or impeded by the litigation. It is well-established that even an indirect economic interest is sufficient to justify intervention of right. *Cascade Natural Gas Corp. v. El Paso Natural Gas Co.*, 386 U.S. 129, 133-135 (1967). *See also NRDC,* 561 F.2d at 908-910.

As explained in Section II.B. *supra*, RANC members have a strong, current interest in the meaning and implications of CAA § 112(d)(6) for revisions of existing hazardous air pollutant standards that apply to the manufacturers they represent.  Those questions are at issue in the SunCoke petition for review, which addresses an EPA rulemaking intended, in part, to fulfill EPA's obligation to conduct a "technology review" of existing emission standards at least once every eight years under CAA § 112(d)(6).  *See* 89 Fed. Reg. at 55,684, 55,686, 55,688.

Not only is the interpretation and application of section 112(d)(6) central to EPA's stated justification for the rulemaking at issue in this petition for

review, it also was an important aspect of SunCoke's comments on the proposed rule and EPA's response to those comments.  *See* SunCoke's October 2, 2023 comments (available at https://www.regulations.gov/comment/EPA-HQ-OAR-2002-0085-0968) at, e.g.,  3-4, 26-27: 89 Fed. Reg. at 55,709-712.  In addition, SunCoke filed a motion to stay the final rule pending judicial review, Doc. #2077531 ("Motion To Stay"), in which it asserts that the Coke Oven final rule unreasonably imposed burdensome or infeasible emission standards that would not produce any benefits, based on EPA's misreading of this Court's *LEAN* precedent (955 F.3d 1088) and the CAA.  Motion To Stay at 11, 13-14.

Thus, facilities represented by members of RANC have a substantial interest in the subject matter of this petition for review.

## C.    Exclusion from this Litigation Would Impair RANC's Ability To Protect its Members' Interests.

The requirement under Fed. R. Civ. P. 24(a)(2) regarding the effect the disposition of the action will have on the applicant's interests involves both practical and legal considerations:  "If an absentee would be substantially affected in a practical sense by the determination made in an action, he should, as a general rule, be entitled to intervene…."  Advisory Committee Note to 1966 Amendment to Rule 24.

RANC's members will be directly affected by this Court's conclusions

about the meaning and implications of CAA § 112(d)(6) in the context of

SunCoke's petition for review and, potentially, its Motion To Stay. Since all

national emission standards for hazardous pollutants that EPA promulgates can

only be reviewed in the Court of Appeals for the District of Columbia Circuit,

*see* CAA § 307(b)(1), 42 U.S.C. § 77607(b)(1), the conclusion of the panel

hearing this case about the best reading of section CAA § 112(d)(6) will be

binding on the panel reviewing future EPA section 112(d)(6) reviews of

emission standards for source categories represented by RANC's members[6],

unless the decision in this case is overruled or revised by the entire court sitting

*en banc* or by the Supreme Court. *See*, *e.g*., *LaShawn A. v. Barry*, 87 F.3d 1389,

1395 (D.C. Cir. 1996). This scenario has previously come to pass with respect

to numerous aspects of EPA's implementation of CAA § 112.[7]

---

[6] Because, since *Loper Bright Enterprises v. Raimondo*, 603 U.S. ___, 444 S. Ct. 2244 (2024) ("*Loper Bright*"), this Court must decide the best interpretation of the CAA, rather than just whether EPA's interpretation in the Coke Oven final rule is a permissible one, the Court's conclusions in this case may now have even greater impact on RANC's members.

[7] *See*, *e.g*., *Sierra Club v. EPA*, 479 F.3d 875, 876-880 (D.C. Cir. 2007) ("Because most of the standards violate the Clean Air Act as interpreted by this Court in *Cement Kiln Recycling Coalition v. EPA*, 255 F.3d 855 (D.C. Cir. 2001) (*per curiam*), and *National Lime Ass'n v. EPA*, 233 F.3d 625 (D.C. Cir. 2000)...we vacate the standards in their entirety…." *Id*. at 876.); 479 F.3d at 883 ("EPA has failed to offer any reason for distinguishing what it did here from what we invalidated in *National Lime II*...This brings us to the one issue in this case controlled by neither *Cement Kiln* nor *National Lime II*,...."); *Sierra Club v.*

(...continued)

Note that the adverse effect intervenor-applicant seeks to avoid would occur not only when RANC's members are seeking judicial review of future unfavorable emission standards (or when intervening to defend emission standards RANC's members consider favorable that are being challenged by petitioners similar to Environmental Group Petitioners). At an earlier stage, an unfavorable interpretation of CAA § 112(d)(6) adopted by the Court in this case would impair the ability of RANC's members to persuade EPA to take a flexible approach (e.g., weighing low risk from existing emissions and high cost of further reductions) in rulemakings that review MACT standards for other industry categories under CAA § 112(d)(6) – rulemakings that currently are underway, as described in Section II.B., *supra*.[8]

The criterion this Court has applied in determining whether intervention is justified is whether "the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest." *Fund for*

_____

(...continued)
*EPA*, 863 F.3d 834, 839 (D.C. Cir. 2017) (when reviewing emission standards for hazardous air pollutants adopted under CAA § 112(d)(6), the Court applied the conclusions of *National Lime Ass'n* about whether and how EPA can use limitations on a surrogate pollutant).

[8] *See*, *e.g.*, *US Sugar Corp. v. EPA*, 830 F.3d 579, 599 (D.C. Cir. 2016) (because of opinions of the Court interpreting the CAA when reviewing different Clean Air Act regulations, EPA felt compelled to eschew its previous approach that provided relief for unavoidable malfunctions, when it adopted MACT standards for boilers).

*Animals*, 322 F.3d at 731. *See also id.* at 735; *NRDC*, 561 F.2d at 909. The manufacturers represented by RANC's members clearly "may," "as a practical matter" be adversely affected if the Court adopts a reading of the CAA in this case that, for example, requires EPA to ignore the level of risk associated with existing emissions when deciding whether and how it is "necessary" to revise existing emission standards under CAA § 112(d)(6).[9] Exclusion of RANC from the subject action would directly impair RANC's ability to protect its members' interests in avoiding that inappropriate and undesirable result in section 112(d)(6) reviews of emission standards that apply to the manufacturers they represent.[10]

---

[9] Courts have recognized that a person should be granted intervention in a case when that case may establish a legal precedent that would adversely affect that person in a different proceeding. *See*, *e.g.*, *United States v. Stringfellow*, 783 F.2d 821, 826-27 (9th Cir. 1986), *vacated on other grounds,* 480 U.S. 370 (1987) (prospect of *stare decisis* effect of judgment in a case may supply the requisite practical impairment warranting intervention as of right); *Corby Recreation, Inc. v. Gen. Electric Co.*, 581 F.2d 175, 177 (8th Cir. 1978) (same). *See also Huron Environmental Activist League v. USEPA*, 917 F. Supp. 34, 43 (D.D.C. 1996) (finding industry trade associations had a right to intervene in a case seeking injunctive relief, although the injunctive relief sought would not apply directly to them, in part "because it would establish a rule of law unfavorable to them").

[10] This Court held in *Teva Pharmaceuticals USA, Inc. v. Sebelius*, 595 F.3d 1303, 1311-15 (D.C. Cir. 2010), in the analogous, if not less-compelling, situation where a pharmaceutical manufacturer wanted to challenge an FDA statutory interpretation that was established not in a rulemaking, but in two

(...continued)

### D. RANC's Interests Are Not Adequately Represented by Existing Parties.

Neither Petitioners nor Respondents adequately represent RANC's interests. "The requirement of the Rule is satisfied if the applicant shows that representation of [its] interest 'may be' inadequate." *Trbovich v. United Mine Workers of America*, 404 U.S. 528, 538 and n.10 (1972). Moreover, the Court explained in *Trbovich* that the applicant's burden of making such a showing should be treated as "minimal." *Id*.

This Court has applied the *Trbovich* standard broadly. *See, e.g.*, *Dimond v. District of Columbia*, 792 F.2d 179, 192 (D.C. Cir. 1986) ("*Dimond*"); *NRDC*, 561 F.2d at 911. Intervention should be allowed whenever "there is a serious possibility that the [absentee's] interest may not be adequately protected by any existing party." *United States v. Am. Tel. and Tel. Co.*, 642 F.2d 1285, 1293 (D.C. Cir. 1980) (internal quotation and citation omitted). Those opposing intervention have the burden of demonstrating that the intervenor-applicant's interests will be adequately represented by the parties. *Id.* at 1293, 1294.

---

(...continued)
adjudications to which the manufacturer was not a party, that the agency's imminent application of its interpretation to the manufacturer's product was sufficient for standing purposes.

Courts repeatedly have recognized the obvious, that neither an interest group seeking more-stringent regulation nor the government agency that would impose those more-stringent regulations can adequately represent the interests of the regulated community. *Dimond,* 792 F.2d at 192-193 (*citing NRDC*, 561 F.2d at 912-13). Clearly the Environmental Group Petitioners – environmental advocacy NGOs – cannot represent RANC's interests in this litigation, since their organizational objectives favor more-stringent regulation of emissions from industrial facilities, while RANC's members benefit from less-stringent and more-flexible emission limitations that may result from this Court's rejection of EPA's cramped interpretation of its obligations and discretion in implementing CAA § 112(d)(6). Obviously Respondents cannot represent RANC's interests, since it is Respondents' improper interpretation of and implementation of section 112(d)(6) that RANC seeks to intervene to contest.

Petitioner SunCoke and the other Industry Petitioners also cannot be relied upon to adequately protect RANC's interests. Although, as explained in Section III.B., *supra*, SunCoke raised questions about how EPA must and may act in implementing CAA § 112(d)(6) in the rulemaking that resulted in this litigation and in the Motion To Stay that are similar to issues RANC members have raised with EPA in similar rulemakings, this Court has stated

that "intervenors are not sufficiently protected by a mere congruence of interests with a party litigant." *Koretoff v. Vilsack*, 614 F.3d 532, 540 (D.C. Cir. 2010) (citing *Fund for Animals*, 322 F.3d at 737). Industry Petitioners will be addressing numerous shortcomings they see in the specific emission limitations EPA adopted in the final rule that are mostly not directly related to the nature of EPA's authority under CAA § 112(d)(6)[11], while RANC has a broader interest in how EPA implements section 112(d)(6) for many industry source categories, and in the flexibility to implement section 112(d)(6) that RANC asserts is inherent in the terms of that provision and in the statutory scheme, but that EPA's interpretation of the statute rejects. *See NRDC*, 561 F.2d at 912 (broad interests, versus narrowly focussed interests related to impacts on a specific industry, justifying separate representation). Because of that difference in posture, RANC may present its arguments more forcefully or in a significantly different manner than Industry Petitioners. *See id.* at 912-13; *Fund for Animals*, 322 F.3d at 735-37. No more is required.

---

[11] *See*, *e.g*., Motion To Stay at 3 (arbitrarily short compliance deadline), 11-12 (arbitrary subcategorization), 12 (refusal to use work practice standards or limits on surrogate pollutants), 13-16 (unlawful fenceline monitoring requirements).

### E.  RANC Has Standing To Act as an Intevenor.

Numerous opinions of this Court state that a person seeking to intervene in a petition for review must demonstrate standing under Article III. of the United States Constitution.  *See*, *e.g.*, *Fund for Animals*, 322 F.3d at 731-32.  RANC believes those opinions are not binding in this proceeding, because they are contradicted by opinions of the Supreme Court.  *See Grocery Mfrs. Ass'n v. EPA*, 693 F.3d 169, 180 (D.C. Cir. 2012) (Tatel, J., concurring).

In *Va. House of Delegates v. Bethune-Hill*, 587 U.S. 658, 663 (2019), the Court distinguished between an intervenor that seeks to appeal a judgment to a higher court when no other party appeals – in which case the intervenor must demonstrate Article III standing at the time of its appeal, since it is the only party invoking the higher court's jurisdiction – and an intervenor at an earlier stage, where it is not the party invoking the court's jurisdiction.  In the latter situation (the one analogous to RANC's motion to intervene in this petition for review), the Court explained that it was not necessary to demonstrate standing to participate in a bench trial as an intervenor, because that role did not "entail[] invoking a court's jurisdiction…."  *Id*.; *see also Bond v. United States*, 564 U.S. 211, 217 (2011).  Also, *Massachusetts v. EPA* clearly established the principle that it is enough to satisfy the requirement for a case and controversy under

Article III if at least one of several parties has demonstrated its standing. 549 U.S. 497, 518 (2007). It conflicts with this principle to subject someone who wishes to intervene and become a party supporting the petitioners to a requirement to demonstrate standing that would not apply if that person was one of several original petitioners.[12]

But if RANC is required to demonstrate standing in order to intervene, the facts described above show that RANC satisfies the three elements for Article III standing that the Supreme Court set out in *Lujan*, 504 U.S. at 560.[13] First, RANC represents organizations that face immediate harm if the Court adopts EPA's restrictive, unfavorable interpretation of what it must and may do in a CAA § 112(d)(6) review. There is nothing speculative about that harm: members of RANC are currently involved in EPA rulemakings directed at industrial sectors they represent, in which they are urging a flexible, pragmatic interpretation of section 112(d)(6) at odds with the interpretation EPA adopted in the Coke Oven final rule. *See, e.g.*, n.5, *supra*; *see also* 88

---

[12] There can be little question that petitioner SunCoke, whose operations are regulated directly by the final rule, has standing to challenge it. *See Lujan v. Defenders of Wildlife*, 504 US 555, 561-62 (1992).

[13] This Court has stated that an applicant for intervention that meets the test for intervention of right also thereby has demonstrated Article III standing. *Roeder v. Islamic Republic of Iran*, 333 F.3d 228, 233 (D.C. Cir. 2003).

Fed. Reg. at 78,695 (court-ordered deadline of Nov. 13, 2023 for final action on CAA § 112(d)(6) review of emission standards for Rubber Tire Manufacturing).[14]

Second, the threatened injury would be the direct result if the Court concluded in the instance case, while carrying out its duty as set forth in *Loper Bright*, 444 S. Ct. 2244, that EPA's interpretation of CAA § 112(d)(6) in the Coke Oven final rule is the best interpretation of the Clean Air Act.

Third, a decision by the Court in the instant case rejecting some or all of those aspects of EPA's understanding, presented in the Coke Oven final rule, of its statutory role when conducting a CAA § 112(d)(6) review – an interpretation of the Act that RANC opposes – would directly mitigate the imminent harm RANC's members face.[15]

---

[14] In the analogous, although arguably less-compelling, situation where a pharmaceutical manufacturer wanted to challenge an FDA statutory interpretation that was established not in a rulemaking, but in two adjudications to which the manufacturer was not a party, this Court held that the agency's imminent application of its statutory interpretation to the manufacturer's product was sufficient for standing purposes. *Teva Pharmaceuticals USA, Inc. v. Sebelius*, 595 F.3d 1303, 1311-15 (D.C. Cir. 2010).

[15] RANC can demonstrate the elements of standing through its members. *Warth v. Seldin*, 422 U.S. 490, 511 (1975); *Hunt v. Washington State Apple Advertising Comm'n*, 432 U.S. 333 (1977). And those trade associations that are members of this *ad hoc* coalition in turn would have standing to intervene in this case either in their own right – because an adverse decision in this case would impair the associations' ability to advocate and, if necessary, litigate for a reasonable

(...continued)

## IV.   **CONCLUSION**

For the reasons set forth above, RANC is entitled to intervene as of right in this proceeding under Fed. R. App. P. 15(d) and the criteria applied under Fed. R. Civ. P. 24(a).  RANC therefore respectfully requests that this Court grant RANC's motion to intervene on behalf of the petitioner in this case.

In addition, because Industry Petitioners already filed motions to stay, which raise legal issues in which RANC has an interest, as described in Sections II.B. and III.B.-C., *supra*, RANC respectfully requests that the Court grant this motion to intervene expeditiously and set a deadline of

---

(...continued)

interpretation and implementation of CAA § 112(d)(6) for their members who have industrial operations subject to emission standards for hazardous air pollutants – or on behalf of their members, who are the ones who would be regulated directly by emission standards that an unreasonable EPA interpretation and implementation of CAA § 112(d)(6) would produce.  *See See, e.g.*, *Nat'l Coal Ass'n v. Hodel*, 617 F. Supp. 584, 588 (D.D.C. 1985), *aff'd*, 825 F.2d 523 (D.C. Cir. 1987).  Both the trade associations and their collective coalition, who are actively involved in opposing EPA rulemaking following the same questions of statutory interpretation presented here, easily meet the "undemanding" germaneness requirement, which is satisfied by "mere pertinence between litigation subject and organizational purpose…."  *Humane Society of the United States v. Hodel*, 840 F.2d 45, 56, 58 (D.C. Cir. 1988).  And there is no reason that the questions of the proper interpretation and implementation of the mandate of CAA § 112(d)(6), applied in the instant rule to numerous coke oven operations, and implicated in many other nationally applicable categorical emission standards, would require the participation of individual companies.

November 5, 2024, for RANC to file a brief of up to 5200 words in

connection with those motions to stay.[16]

Dated:  October 3, 2024                    Respectfully submitted,

                                           /s/ *Russell S. Frye*
                                           Russell S. Frye
                                           FryeLaw PLLC
                                           1629 K Street, N.W.
                                           Suite 300
                                           Washington, DC  20006-1631
                                           (202) 572-8267 (tel)
                                           (866) 850-5198 (fax)
                                           rfrye@fryelaw.com
                                           *Counsel for Revise As Necessary*
                                               *Coalition*

---

[16] That deadline and word limit are based on what the parties proposed for Industry Petitioners' reply briefs supporting their motions for stay, in a joint motion filed October 2, 2024 (Doc. #2077915).

**ADDENDUM TO MOTION
TO INTERVENE OF REVISE AS NECESSARY COALITION**

**RULE 26.1 CORPORATE DISCLOSURE STATEMENT**

Pursuant to Fed. R. App. P. 26.1 and Circuit Rules 15(c)(6), 26.1, and 27(a)(4), counsel for applicant for intervention Revise As Necessary Coalition (RANC) certifies as follows:

1.      RANC is an *ad hoc*, informal organization of trade associations and business organizations, formed to fund and conduct advocacy and litigation concerning regulation under the Clean Air Act of emissions from stationary sources, with particular emphasis on how EPA implements the periodic review of existing emission standards for hazardous air pollutants under Clean Air Act section 112(d)(6).

2.      RANC does not have a parent corporation, and no publicly-held company has a 10 percent or greater ownership interest in RANC.  RANC is a "trade association" within the meaning of Circuit Rule 26.1(b).

Dated:  October 3, 2024                    Respectfully submitted,

                                                       /s/ *Russell S. Frye*
                                                       Russell S. Frye
                                                       FryeLaw PLLC

1629 K Street, N.W.
Suite 300
Washington, DC 20006-1631
202-572-8267
rfrye@fryelaw.com
*Counsel for Revise As Necessary*
    *Coalition*

**CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES**

Pursuant to D.C. Circuit Rules 27(a)(4) and 28(a)(1)(A), applicant for intervention Revise As Necessary Coalition hereby submits the following certificate as to parties, rulings, and related cases.

(A)    Parties and Amici

(i) Parties, intervenors, and amici who appeared below

Under Circuit Rule 28(a)(1)(A), the requirement to identify parties, intervenors, and amici who appeared below is inapplicable because the present petition seeks direct review of informal rulemaking.

(ii)    Persons who are parties, intervenors and *amici* in this Court

The petitioner in case No. 24-1288 is SunCoke Energy, Inc.  The respondent is the United States Environmental Protection Agency ("EPA"). GASP, Clean Air Council, Hoosier Environmental Counsel, Just Transition Northwest Indiana, PANIC, PennFuture, and Sierra Club filed a motion to intervene in this case and in case No. 24-287 on September 30, 2024 that the Court has not yet acted on.

There currently are no other intervenors or *amici curiae*, to RANC's knowledge.

 (B)    Ruling Under Review

Petitioner petitioned this Court for review, pursuant to Clean Air Act section 307(b), 42 U.S.C. § 7607(b), of a final action of the Administrator of the United States Environmental Protection Agency issued on July 5, 2024 and titled "National Emission Standards for Hazardous Air Pollutants for Coke Ovens: Pushing, Quenching, and Battery Stacks, and Coke Oven Batteries; Residual Risk and Technology Review, and Periodic Technology Review." Notice of this EPA action was published in the Federal Register on July 5, 2024. 89 Fed. Reg. 55684 (July 5, 2024).

(C)     Related Cases

Petitions for review of the same EPA final agency action have been filed by American Coke and Coal Chemicals Institute and Coke Oven Environmental Task Force (Case No. 24-1287) and by GASP, Clean Air Council, Hoosier Environmental Counsel, Just Transition Northwest Indiana, PANIC, PennFuture, and Sierra Club (Case No. 24-1290). Those petitions for review and the petition for review in the instant case have been consolidated under lead case No. 24-1287. Respondents in those actions are the United States Environmental Protection Agency ("EPA") and Michael Regan, in his capacity as EPA Administrator. RANC does not believe there are any other cases that are related within the meaning of D.C. Circuit Rule 28(a)(1)(C).

Dated: October 3, 2024

Respectfully submitted,

/s/ *Russell S. Frye*
Russell S. Frye
Fryelaw PLLC
1629 K Street, N.W.
Suite 300
Washington, DC 20006-1631
202-572-8267
rfrye@fryelaw.com
*Counsel for Revise As Necessary*
    *Coalition*

**CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT,
TYPEFACE REQUIREMENTS, AND TYPE-STYLE REQUIREMENTS**

Pursuant to Rules 27(d) and 32(g)(1) of the Federal Rules of Appellate Procedure and Circuit Rule 27(a)(2), I hereby certify that the foregoing Motion to Intervene of Revise As Necessary Coalition complies with the word limit in Fed. R. App. P. 27(d)(2), because it contains 5124 words, as counted by a word processing system that includes headings, footnotes, quotations, and citations in the count, and excluding the parts of the document exempted by Fed. R. App. P. 27(d)(2) and 32(f).

This document also complies with the type-face requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6), because it was prepared in a proportionally spaced typeface using Microsoft Word 2016 14 point Times New Roman font.

Dated: October 3, 2024

> s/ *Russell S. Frye*
> Russell S. Frye
> Fryelaw PLLC
> 1629 K Street, N.W.
> Suite 300
> Washington, DC 20006-1631
> 202-572-8267
> rfrye@fryelaw.com
> *Counsel for Revise As Necessary*
>     *Coalition*

**CERTIFICATE OF SERVICE**

This is to certify that the foregoing Motion to Intervene of Revise As Necessary Coalition (including an Addendum with a Rule 26.1 Corporate Disclosure Statement; a Rule 28(a)(1)(A) Certificate as to Parties, Rulings, and Related Cases; and a Rule 32(g) Certificate of Compliance) was filed with the Court and served on all counsel who have entered an appearance in the case, by submitting the motion through the Court's Electronic Case Filing (ECF) system, this 3rd day of October, 2024.

*/s/ Russell S. Frye*