IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

| | |
|---|---|
| AMERICAN COKE AND COAL CHEMICALS INSTITUTE, *et al.*, <br><br> *Petitioners*, <br><br> v. <br><br> U.S. ENVIRONMENTAL PROTECTION AGENCY, *et al.*, <br> *Respondents*, | Case No. 24-1287 <br> (consolidated with <br> Nos. 24-1288, 24-1290) |

**RESPONDENTS' OPPOSITION TO THE REVISE AS NECESSARY
COALITION'S MOTION TO INTERVENE**

This case is about whether EPA reasonably implemented the Clean Air Act's directive to periodically review and, if necessary, revise emissions standards for coke oven batteries and coke oven pushing, quenching, and battery stacks. By its own admission, Movant Revise as Necessary Coalition ("RANC") does not represent any business that involves coke ovens and has no member that could possibly be regulated by the final rule under review here. As such, RANC is not entitled to intervene as of right. This Court should deny the Motion to Intervene.

## BACKGROUND

EPA promulgated the final rule under review here in July 2024. National Emission Standards for Hazardous Air Pollutants for Coke Ovens: Pushing,

Quenching, and Battery Stacks, and Coke Oven Batteries; Residual Risk and Technology Review, and Periodic Technology Review, 89 Fed. Reg. 55,684 ("Rule"). The Rule establishes new emissions standards for previously unregulated hazardous air pollutants ("air toxics") for the coke oven pushing, quenching, and battery stacks source category and imposes leak limits and monitoring requirements on the coke oven battery subcategory. *Id.*

In promulgating the Rule, EPA conducted a residual risk review and technology review for the coke oven pushing, quenching, and battery stacks category and a technology review for the coke oven batteries category. *Id.* Congress mandated that EPA conduct a residual risk review to ensure that emission standards provide an ample margin of safety to protect public health. 42 U.S.C. § 7412(f)(2). Meanwhile, Congress required EPA to conduct periodic technology reviews to ensure facilities continue to reduce their emissions based on developments in technology, practices, and processes. *Id.* § 7412(d)(6). As this Court held, the technology review requires EPA to set first-time emissions standards for previously unregulated air toxics under 42 U.S.C. §§ 7412(d)(2)–(3). *La. Envtl. Action Network v. EPA* ("*LEAN*"), 955 F.3d 1088, 1097 (D.C. Cir. 2020).

American Coke and Coal Chemicals Institute, Coke Oven Environmental Task Force, and SunCoke Energy, Inc. (collectively, "Industry Petitioners")

identify several issues for judicial review. As relevant here, Industry Petitioners question "[w]hether EPA's failure to consider all relevant factors, including residual risk to public health and the environment, cost, and cost effectiveness, when making a determination whether to revise standards 'as necessary' under . . . 42 U.S.C. § 7412(d)(6)" is unlawful. Non-binding Statement of Issues by Pet'rs Am. Coke and Coal Chem. Inst. and the Coke Oven Envtl. Task Force, ECF No. 2077503; *see also* Pet'r SunCoke Energy, Inc.'s Mot for a Stay Pending Judicial Review at 10, 13, ECF No. 2077531 ("EPA failed to adequately justify the new MACT floors.") ("SunCoke Mot.").

RANC seeks to intervene as of right to address the identical issue of "whether EPA correctly interpreted the [Clean Air Act] to require EPA to impose new, more stringent emission limitations even where the existing standards assure protection of human health with an ample margin of safety, where no new or different emission control technology is available, or where the new standards impose excessive costs while producing little regulatory benefit." Mot. to Intervene of Revise as Necessary Coal. at 1–2, ECF No. 2078233 ("Mot.").

## ARGUMENT

The Court should deny RANC's Motion. RANC lacks standing because the Rule will not cause it or its members any concrete, imminent injury. Further,

RANC has not demonstrated entitlement to intervene because the existing parties will fully represent its interests.

I. **RANC Lacks Standing.**

RANC seeks to intervene as of right under Federal Rule of Civil Procedure 24(a). Mot. at 10, 12, 22. "Because the Federal Rules of Appellate Procedure are silent, [this Court] appl[ies] the intervention standards of Civil Rule 24." *United States v. All Assets Held at Credit Suisse (Guernsey) Ltd.*, 45 F.4th 426, 432 (D.C. Cir. 2022). This Court has long held that a party seeking to intervene as of right must establish standing. *Yocha Dehe v. U.S. Dep't of Interior*, 3 F.4th 427, 430 (D.C. Cir. 2021); *see also Defs. of Wildlife v. Perciasepe*, 714 F.3d 1317, 1323 (D.C. Cir. 2013) ("We also require a party seeking to intervene as of right to demonstrate Article III standing.").[1]

At the outset, RANC's assertion, at 19–20, that it should not be required to demonstrate standing is devoid of merit. RANC cites *Virginia House of Delegates v. Bethune-Hill*, 587 U.S. 658 (2019), to assert that an intervenor need not establish standing "because that role d[oes] not 'entail[] invoking a court's jurisdiction . . . .'" Mot. at 19 (quoting *Bethune-Hill*, 587 U.S. at 663). But rather than

---

[1] RANC has waived any request for permissive intervention under Federal Rule of Civil Procedure 24(b). *Carter v. George Washington Univ.*, 387 F.3d 872, 883 (D.C. Cir. 2004) ("we do not consider claims raised for the first time in a reply brief.").

4

articulating any holding on whether a movant must establish standing to intervene as of right, the quoted language simply constitutes part of the Supreme Court's observation that "it was not previously incumbent on the [Virginia] House [of Delegates] to demonstrate its standing." *Bethune-Hill*, 587 U.S. at 663. Moreover, insofar as RANC seeks to intervene as a petitioner, Mot. at 2, its reliance on *Bethune-Hill* is misplaced because that posture necessarily "seek[s] to invoke this Court's jurisdiction," 587 U.S. at 663.

In order to pursue its claim, RANC must establish that RANC itself has standing, one of its members has standing, or both. *See People for the Ethical Treatment of Animals v. U.S. Dep't of Agric.*, 797 F.3d 1087 (D.C. Cir. 2015). It is axiomatic that the "irreducible constitutional minimum of standing contains three elements": (1) an injury in fact that (2) is traceable to the respondent's action and (3) is likely to be redressed by a favorable decision. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992).

Neither RANC nor its members can establish all three elements. First, RANC does not assert that the Rule injures it or any of its members. *See generally* Mot. at 20–21. In fact, RANC candidly admits that its members only "face immediate harm if the Court adopts EPA's restrictive, unfavorable interpretation of what it must and may do in a [42 U.S.C. § 7412(d)(6)] review." *Id.* at 20. Second, RANC traces its phantom injury to *the Court*'s action, not EPA's. In RANC's own

5

words, its members "face immediate harm if *the Court* adopts" EPA's reading of 42 U.S.C. § 7412(d)(6). *Id.* (emphasis added); *see also id.* at 21 ("the threatened injury would be the direct result if *the Court* concluded . . . that EPA's interpretation of [42 U.S.C. § 7412(d)(6)] . . . is the best interpretation of the Clean Air Act.") (emphasis added). Third, insofar as neither RANC nor its members is subject to regulation via the Rule, a "favorable" decision cannot remedy RANC's phantom injury. In short, neither RANC nor its members satisfies any of the standing elements.

Instead, RANC simply asserts that its members "have a very large economic interest in the question of what factors [42 U.S.C. § 7412(d)(6)] requires or allows EPA to consider when deciding whether it is necessary to revise existing emission standards and, if so, what the revised emission standards should require." Mot. at 8. In other words, RANC seeks to intervene because this Court's decision on a purely legal issue in this case could have a precedential effect in a hypothetical future case.

However, both the Supreme Court and this Court have rejected this type of attenuated standing argument. For instance, the Supreme Court has observed that Article III's causation requirement "rules out attenuated links—that is, where the government action is so far removed from its distant (even if predictable) ripple effects that the [movant] cannot establish Article III standing." *Food & Drug*

*Admin. v. All. for Hippocratic Medicine*, 602 U.S. 367, 383 (2024). In this Court's own words, "the possibility of an adverse precedent is clearly insufficient to establish the injury necessary for standing under Article III." *Nat'l Lime Ass'n v. EPA*, 233 F.3d 625, 636 (D.C. Cir. 2000).

This Court has accordingly and consistently denied intervention for parties relying on similar standing theories. For instance, in *City of Cleveland v. Nuclear Regulatory Commission*, this Court denied a movant's intervention motion because the movant's "concern about the precedential effect of an adverse decision is not sufficient to confer standing." 17 F.3d 1515, 1515–16 (D.C. Cir. 1994); *see also Shipbuilders Council of Am. v. United States*, 868 F.2d 452, 456 (D.C. Cir. 1989) ("we know of no authority recognizing that the mere potential precedential effect of an agency action affords a bystander to that action a basis for complaint."). The Court reiterated this holding in *Conference Group, LLC v. FCC*, explaining that "the mere fact that an adjudication creates a precedent that could harm a non-party does not create the injury-in-fact required for Article III standing." 720 F.3d 957, 959 (D.C. Cir. 2013).

In fact, this Court denied an industry trade association's intervention motion in a case challenging a Clean Air Act regulation that did not regulate the association's members just last month. *See* Order, *Cal. Cmtys. Against Toxics v. EPA*, No. 24-1178, ECF No. 2073052 (D.C. Cir. Sept. 4, 2024). In that case, the

7

American Petroleum Institute sought to intervene to challenge EPA's statutory authority to conduct a second risk review under the Clean Air Act, 42 U.S.C. § 7412(f)(2), but had no members who were regulated by the rule at issue. *See* Mot. of the Am. Petroleum Inst. for Leave to Intervene as Pet'r at 3, *Cal. Cmtys. Against Toxics v. EPA*, No. 24-1178, ECF No. 2063232 (D.C. Cir. Jul. 5, 2024). This Court denied the motion to intervene, ruling that the trade association failed to demonstrate a sufficient interest in the case or that such an interest was not adequately represented by existing parties. Order, *Cal. Cmtys. Against Toxics*, No. 24-1178.

Like the American Petroleum Institute's in *California Communities Against Toxics*, RANC's interest in this case is purely academic and none of its members have suffered or will suffer an injury in fact. This Court should thus likewise deny the Motion.

## II. Existing Parties Can Adequately Represent RANC's Interests.

Even setting aside the issue of standing, this Court can and should independently deny the Motion because the existing parties can fully advance the legal arguments that RANC wishes to make.

Although the burden of establishing inadequate representation in a motion for intervention is not onerous, intervention will be denied when the intervening party only seeks to raise an argument already raised by another party. For instance,

8

this Court explained in *All Assets Held at Credit Suisse (Guernsey) Ltd.* that a "would-be intervenor is adequately represented when she 'offer[s] no argument not also pressed by' an existing party." 45 F.4th at 432 (quoting *Bldg. & Constr. Trades Dep't v. Reich*, 40 F.3d 1275, 1282 (D.C. Cir. 1994)).

Here, RANC's sole interest is in EPA's interpretation of the Agency's obligations and discretion under 42 U.S.C. § 7412(d)(6). Mot. at 2–3. But Industry Petitioners have already put forth arguments on this very issue in this case. Mot. by the Am. Coke and Coal Chems. Inst. and the Coke Oven Envtl. Task Force for Stay at 5–8, ECF No. 2077499; SunCoke Mot. at 10, 13.

RANC appears to concede this point, but nevertheless argues that Industry Petitioners "cannot be relied upon to present RANC's position on the meaning of [42 U.S.C. § 7412(d)(6)]" because they "will be addressing numerous shortcomings . . . that are mostly not directly related to the nature of EPA's authority under [42 U.S.C. § 7412(d)(6)]." Mot. at 3, 17–18. This argument borders on the absurd. The fact that existing parties in a case are raising several arguments does not make each of those individual arguments unable to be addressed. Were the rule otherwise, a person in RANC's shoes would be entitled to intervene in every case that raises more than one issue. That does not amount to a showing that "there is a serious possibility that the (absentee's) interest may not be adequately represented by any existing party." *United States v. Am. Tel. & Tel. Co.*, 642 F.2d

9

1285, 1293 (D.C. Cir. 1980).

Thus, because Petitioners plan to raise the same statutory interpretation issues that RANC identifies as the sole basis for its intervention, RANC's asserted interests are adequately represented. *See All Assets Held at Credit Suisse (Guernsey) Ltd.*, 45 F.4th at 432. If RANC wishes to elaborate on those issues, it may seek leave to file an amicus brief consistent with this Court's rules. *See* Order, *Cal. Cmtys. Against Toxics*, No. 24-1178 (denying intervention but granting leave to participate as amicus curiae).

## CONCLUSION

For the foregoing reasons, the Court should deny RANC's Motion to Intervene.

DATED: October 23, 2024

Respectfully submitted,

TODD KIM
Assistant Attorney General

*/s/ Albert Lin*
DANIEL J. MARTIN
ALBERT LIN

OF COUNSEL:
ADAN SCHWARTZ
Environmental Protection Agency
Office of General Counsel
1200 Pennsylvania Avenue, N.W.
Washington, D.C. 20460

U.S. Department of Justice
Environmental Defense Section
P.O. Box 7611
Washington, D.C. 20044
Phone: (202) 307-1056
Email: Daniel.Martin3@usdoj.gov

*Counsel for Respondents*

# CERTIFICATE OF COMPLIANCE UNDER FED. R. APP. P. 27

I hereby certify on October 23, 2024, that this document complies with the type-volume limitation of Federal Rule of Appellate Procedure 27(d)(2)(A) because it contains 2,093 words, excluding those parts exempted by Rule 32(f).

This document complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5)(A) and the typeface style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word Times New Roman 14-point font.

*/s/ Albert Lin*
ALBERT LIN
*Counsel for Respondents*

# CERTIFICATE OF SERVICE

I hereby certify that on October 23, 2024, I electronically filed this document with the Clerk of the Court for the United States Court of Appeals for the District of Columbia Circuit by using the appellate CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

*/s/ Albert Lin*
ALBERT LIN
*Counsel for Respondents*