**ORAL ARGUMENT NOT YET SCHEDULED**

**IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT**

| | |
|---|---|
| AMERICAN COKE AND COAL CHEMICALS INSTITUTE, *et al.*, *Petitioners*, v. U.S. ENVIRONMENTAL PROTECTION AGENCY, *et al.*, *Respondents*, | Case No. 24-1287 (consolidated with Nos. 24-1288, 24-1290) |

## JOINT MOTION TO SET BRIEFING FORMAT AND SCHEDULE

In response to this Court's Order of December 2, 2024, Industry Petitioners,[1]

Coke Oven Community Petitioners,[2] and Respondents United States

---

[1] Industry Petitioners consist of American Coke and Coal Chemicals Institute and Coke Oven Environmental Task Force in Case No. 24-1287, and SunCoke Energy, Inc., in Case No. 24-1288. Industry Petitioners have intervened in support of Respondents in Case No. 24-1290.

[2] Coke Oven Community Petitioners consist of GASP, Clean Air Council, Hoosier Environmental Council, Just Transition Northwest Indiana, PANIC, PennFuture, and Sierra Club in Case No. 24-1290. Coke Oven Community Petitioners have intervened in support of Respondents in Case Nos. 24-1287 and 24-1288.

Environmental Protection Agency and Jane Nishida[3] respectfully submit this proposal to set a briefing format and schedule in the above-captioned consolidated cases.

As described below, the Parties have conferred and reached a consensus on the briefing schedule. With regards to the lengths of their briefs, Coke Oven Community Petitioners and Respondent EPA agree and propose that the default briefing format is appropriate for all briefs. Industry Petitioners disagree with the Coke Oven Community Petitioners' and Respondent EPA's proposal as to the number of words allotted to the Industry Petitioners' briefs.

## A.     Briefing Schedule

All Parties agree that the following briefing schedule is appropriate:

| Filing | Due Date |
|---|---|
| Petitioners' Opening Briefs | April 8, 2025 |
| Amicus briefs supporting Petitioners | April 15, 2025 |
| Respondents' Brief | July 8, 2025 |
| Amicus briefs supporting Respondents | July15, 2025 |
| Respondent-Intervenors' Briefs | July 29, 2025 |
| Petitioners' Reply Briefs | August 19, 2025 |
| Deferred Joint Appendix | August 29, 2025 |

[3] Respondents United States Environmental Protection Agency and Acting Administrator Jane Nishida are collectively identified as EPA. Pursuant to Federal Rule of Appellate Procedure 43(c)(2), Acting Administrator Jane Nishida is automatically substituted in place of former Administrator Michael S. Regan.

The proposed briefing intervals reflect multiple factors for which the Parties have accounted, including: the time needed for Respondent to obtain necessary management approvals at the Justice Department and EPA, federal holidays, counsel's other work commitments, and counsel's leave schedules.

**B.    Briefing Format**

The Parties agree that Industry Petitioners and Coke Oven Community Petitioners should have separate briefs, both as petitioners and as respondent-intervenors. As evidenced by each petitioner and respondent-intervenor grouping, they have divergent and conflicting interests and cannot share briefs.

Both Coke Oven Community Petitioners and EPA agree that the Court should allocate the standard briefing word limits for this case, as identified in Federal Rule of Appellate Procedure 32 and D.C. Circuit Rule 32. Industry Petitioners disagree and believe that a larger word limit for their brief is necessary to address all of the distinct issues presented by the Coke Rule challenged here. The Parties state the rationales for their positions below.

**1.    Industry Petitioners' Proposed Word Limits and Rationale**

Industry Petitioners propose a briefing format that will provide all Parties with sufficient words to brief the Court on the numerous highly technical and complex issues presented by the Coke Rule challenged here. Importantly, because

EPA chose in the Coke Rule to combine regulations affecting multiple distinct kinds of metallurgical coke facilities and operations, all Industry Petitioners are not affected by the Final Rule in the same way, and individual Industry Petitioners need to raise arguments to this Court that do not apply to the other Industry Petitioners. Therefore, Industry Petitioners respectfully request a larger brief in order to raise these multiple distinct issues to the Court – 20,000 words for their joint opening brief, and 10,000 words for a joint reply brief.

The Coke Rule, while fashioned by EPA as a single final agency action, makes significant changes to the two fundamentally different industries that produce metallurgical coke: the coke byproduct recovery industry and the heat recovery/non-recovery industry. Industry Petitioners ACCCI and COETF represent all of the companies in the U.S. that employ the byproduct recovery process, whereas Industry Petitioner SunCoke is an independent coke producer that uses the heat/non-recovery process. A joint Industry Petitioners' brief not to exceed 20,000 words is needed to afford Industry Petitioners the opportunity to explain adequately and fully to the Court how the Coke Rule affects the industrial processes used by them or their members, while also not duplicating arguments where no distinctions between the interests and legal arguments raised by the Industry Petitioners exist.

Industry Petitioners' proposed word limits are necessary to facilitate full briefing of the various legal challenges to the Coke Rule, which is effectively two separate final agency actions affecting two distinct coke industries folded together into one large rule. EPA has typically addressed the risk and technology reviews called for by the Clean Air Act, *see generally National Ass'n for Surface Finishing v. EPA*, 795 F.3d 1, 5 (D.C. Cir. 2015), one source category at a time. *See, e.g.*, 89 Fed. Reg. 16408 ("National Emission Standards for Hazardous Air Pollutants: Taconite Iron Ore Processing"). Here, by contrast, EPA finalized emission standards for the two distinct source categories in a single rule. Several of the Coke Rule's regulations applying to ACCCI's and COETF's byproduct-recovery-process facilities do not affect SunCoke's facilities. Likewise, the provisions of the Coke Rule that apply to SunCoke's heat/non-recovery process facilities do not affect ACCCI's and COETF's member companies.

a. *Industry Petitioners Raise Different Arguments Because They Represent Industries Using Different Cokemaking Technologies that are Regulated Differently Under the Coke Rule*

ACCCI and COETF's members operate all of the existing byproduct recovery coke facilities in the U.S. Several critical aspects of the Coke Rule apply only to ACCCI and COETF's members and not to SunCoke, the other Industry Petitioner in this case. Those distinct regulations of ACCCI and COETF's members include:

- The Coke Rule's fenceline monitoring and work practice standards, which apply only to byproduct recovery coke facilities. *See* 89 Fed. Reg. at 55694 (codified at 40 C.F.R. § 63.314).

- The Coke Rule's lowering of leak emission limits for coke oven doors, lids, and offtakes for the Coke Oven Battery Source Category. *See* 89 Fed. Reg. at 55694 (codified at 40 C.F.R. § 63.302(a)(4)).

- The Coke Rule's new emission standards for coke oven battery stacks, and EPA's departure from using opacity standards for battery stacks as a surrogate for particulate matter emissions. *See* 89 Fed. Reg. at 55708-09 (codified at 40 C.F.R. § 63.7296).

\* \* \*

SunCoke, by contrast, is an independent coke producer that uses the heat/non-recovery process. Several aspects of the Rule apply only to SunCoke, and not to ACCCI or COETF.

- The Coke Rule sets unique numerical emission limits on SunCoke's main stacks and bypass vent stacks. *See* 89 Fed. Reg. at 55708–09 (codified at 40 C.F.R. §§ 63.7297, 63.7298).

- The Coke Rule sets unique and redundant standards on SunCoke's HNR coke oven batteries, including the requirement to perform both pressure

monitoring and Method 303A monitoring. *See* 89 Fed. Reg. at 55696

(codified at 40 C.F.R. § 63.303(a)(1)).

In addition to the distinct interests of Industry Petitioners, challenges to the

Coke Rule require briefing issues of significant technical complexity, procedural

defects by EPA, and substantive legal questions. The Coke Rule sets emission

limits for 17 different hazardous air pollutants and finalizes numerous other

regulatory requirements, including new fenceline monitoring requirements, new

and revised leak limits, and new work practice standards. Each of these new and

revised regulatory requirements involved extensive data collection, interpretation,

and analysis, both from Industry Petitioners and EPA. There are more than 2,300

documents posted on the two rulemaking dockets that comprise the Coke Rule.

This substantial evidentiary record has led to numerous substantive disagreements

between Industry Petitioners and EPA, including especially whether EPA's "upper

prediction limit" calculations were developed with insufficient data resulting in

arbitrarily stringent MACT floors. *See* 89 Fed. Reg. at 55711. Without appropriate

briefing word limits, EPA would circumvent judicial review of the many serious

legal and technical errors in the Coke Rule.

This Court has previously allowed increased word limits when hearing

challenges to EPA rulemakings that involve both complex technical rules and

significant legal issues. In *West Virginia v. EPA*, D.C. Cir. No 15-1363, which

involved consolidated petitions challenging EPA's Clean Power Plan, this Court allowed opening briefs of 42,000 words per side – more than double the number Industry Petitioners request here. *See* ECF 1595922. The Court also allowed the petitioners in that case to file separate briefs on the substantive and procedural issues, something Industry Petitioners do not request here. Similarly in *Wisconsin v. EPA*, D.C. Cir. No. 16-1406, which concerned a challenge to EPA's Cross-State Air Pollution Rule, the Court allotted 18,000 words for industry petitioners (and similarly aligned state petitioners) and 12,000 words for environmental petitioners (and similarly aligned state petitioners). *See* ECF 1691655.

     b.    *Industry Petitioners Intend to File a Joint Brief to Limit Unnecessarily Repetitive Briefing Wherever Possible*

Industry Petitioners propose to file a joint brief in order to avoid duplication of factual background and other required sections of briefs, and to combine substantive arguments wherever possible. For example, all Industry Petitioners share the view that the Coke Rule (1) is arbitrary and capricious because EPA failed to adequately justify various aspects of the Coke Rule; and (2) contravenes the Clean Air Act by establishing emissions limits that are not achievable. Industry Petitioners will work together to present those common issues for this Court's resolution. But Industry Petitioners also require additional words to brief the aspects of the rule that do not affect their co-Industry Petitioners.

The Industry Petitioners' proposal is best positioned to present all issues adequately and efficiently for the Court's resolution.

### 2. Coke Oven Community Petitioners' Proposed Word Limits and Rationale

Coke Oven Community Petitioners propose adopting the standard word limits for principal, reply, and intervenor briefs. FRAP 32(a)(7)(B)(i) (13,000 words for a principal brief); FRAP 32(a)(7)(B)(ii) (reply brief should contain no more than half the type-volume of the principal brief); D.C. Circuit Rule 32(e)(2)(B)(i) (9,100 words for intervenor brief).

This Clean Air Act case involves rules for distinct source categories combined into a single rulemaking. Coke Oven Community Petitioners advance a unique interpretation of the statute not shared by the other parties, so there will be minimal, if any, overlap between Coke Oven Community Petitioner's briefs and the other parties' briefs.

Coke Oven Community Petitioners offer the following word-length estimates as good faith projections to support the proposal (not as binding limits). In offering the following justifications, Coke Oven Community Petitioners recognize the importance of concision and will strive to conserve space wherever possible. *See* Opposition of GASP et al. to Petitioners' Motions for a Stay, *GASP et al. v. EPA*, No. 24-1287, Doc. No. 2082373 (Oct. 28, 2024) (1,543 words below the limit).

<u>Opening Brief of Coke Oven Community Petitioners:</u> Coke Oven Community Petitioners' brief will address whether the Final Rule—which revises emission standards for two separate source categories—complies with the Clean Air Act and sets sufficiently stringent emission limits. *See* Petitioners' Non-Binding Statement of Issues to be Raised, *GASP et al. v. EPA*, No. 24-1287, Doc. 2078399 (Oct. 4, 2024). Given the substantial nature of the issues they intend to raise, 13,000 words is reasonable. Consistent with Respondent EPA's position below, Coke Oven Community Petitioners also believe that 13,000 words is sufficient to cover their challenges to each of the two sets of source category standards.

### **Argument Sections**

In their opening brief, Coke Oven Community Petitioners intend to make three primary arguments, which they estimate will take 9,000 words (roughly 3,000 words each):

First, EPA violated the Clean Air Act and acted arbitrarily and capriciously by failing to set emission limits for all legally required hazardous air pollutants and by setting emission limits that are insufficiently stringent. Second, EPA violated the Clean Air Act and acted arbitrarily and capriciously in its analysis of four separate emission standards by failing to examine specific technological developments and other data favoring more stringent standards. Each of the four

standards involves a different type of air pollution control or monitoring system that will require discussion in the opening brief. Third, EPA violated the Clean Air Act and acted arbitrarily and capriciously by failing to conduct a "risk review" pursuant to Clean Air Act § 112(f)(2) for the Coke Oven Batteries source category.

As in past cases involving section 112 of the Clean Air Act, these issues will require an analysis of relevant legal principles, as well as an explanation of highly technical concepts, including appropriate methodologies for estimating emissions from the best performing coke ovens. *See, e.g.*, Opinion filed Per Curiam, *U.S. Sugar v. EPA*, No. 22-1271 (September 3, 2024); *Sierra Club v. EPA*, 895 F.3d 1 (D.C. Cir. 2018); *National Association for Surface Finishing v. EPA*, 795 F.3d 1 (2015).

The third issue presents a novel question of statutory interpretation and a question of first impression for this Court: whether section 112(f)(2) of the Clean Air Act imposes a one-time or recurring obligation on EPA to determine whether more stringent emission standards for a given source category adequately protect public health. This issue will require a discussion of relevant precedent and legislative history, as well as the plain text of section 112(f)(2) and related sections of the Clean Air Act. Coke Oven Community Petitioners will advance an entirely different view of section 112(f)(2) than either EPA or Industry Petitioners.

The argument section for even one such issue can take several thousand words. *E.g.,* Proof Opening Brief, *Hoosier Environmental Council et al. v. EPA*, No. 23-1119, Doc. 2015004 at 38-50 (Aug. 31, 2023) (approximately 3,000 words to argue that EPA was arbitrary in failing to require fenceline monitoring); Proof Opening Brief, *Crossett Concerned Citizens for Environmental Justice v. EPA*, No. 17-1257, Doc. 1780766 at 27-40 (April 2, 2019) (approximately 3,000 words to explain why failing to control unregulated hazardous air pollutants at pulp mills violated the Clean Air Act); Proof Opening Brief, *Sierra Club v. EPA*, No. 15-1487, Doc. 1645948 at 24-49 (Nov. 14, 2016) (approximately 6,000 words to explain why setting emission standards under section 112(d)(4) of the Clean Air Act was unlawful and arbitrary).

**Remaining Sections:** For the remaining sections required under FRAP 28(a)(4)-(7), (9) and D.C. Circuit Rule 28(a)(7), Coke Oven Community Petitioners estimate needing 4,000 words.

Coke Oven Community Petitioners' statement of the case will necessarily include a description of the relevant factual, legal, and technical background for the two source categories. In one recent challenge to EPA's hazardous air pollutant standards, explaining the relevant background required approximately 3,700 words. *See* Proof Opening Brief for Environmental Petitioners, *Crossett Concerned Citizens for Environmental Justice*, No. 17-1257, Doc. 1780766 at 3-18 (April 2,

2019). In that challenge, the jurisdictional statement, statement of issues, summary of argument, standard of review, and statement on standing required approximately 2,750 words. *Id.* at 1, 2, 18, 21-23, 23-27. Based on these figures, Coke Oven Community Petitioners respectfully submit that 4,000 words is reasonable.

Coke Oven Community Petitioners' Reply: Coke Oven Community Petitioners respectfully request that reply briefs be allotted up to half of the type volume accorded to Coke Oven Community Petitioners' opening brief.

Coke Oven Community Respondent-Intervenors' Brief: The standard 9,100-word limit for intervenor briefs is appropriate.[4] D.C. Cir. R. 32(e)(2)(B)(i). Industry Petitioners collectively raised 23 issues in their non-binding statement of issues, and they plan to challenge provisions governing each source category. Doc. 2077503 (Sept. 30, 2024); Doc. 2077518 (Sept. 30, 2024). Industry Petitioners submitted comments on the proposed version of the Final Rule totaling nearly 130

---

[4] Should the Court provide Industry Petitioners, collectively, with more than the standard 13,000 words for their opening brief, Coke Oven Community Respondent-Intervenors request a proportional increase in the word count for their Respondent-Intervenor brief, such that Respondent-Intervenors are allotted 70 percent of the words provided for Industry Petitioners' opening brief. For example, if the Court provides Industry Petitioners with 20,000 words, Coke Oven Community Respondent-Intervenors would request a limit of 14,000 words for their Respondent-Intervenor brief (0.7 x 20,000). There would be no change to the word counts for Coke Oven Community Petitioners' opening or reply briefs.

single-spaced pages.[5] Coke Oven Community Respondent-Intervenors will advance a differing interpretation of the applicable statutory provisions that will assist the court in resolving Industry Petitioners' claims but prevents adopting or incorporating by reference any other parties' arguments. *Compare* Opposition of GASP et al. to Petitioners' Motions for a Stay, Doc No. 2082373 (Oct. 28, 2024) *with* Respondent EPA's Consolidated Response to Motions to Stay Final Rule Pending Judicial Review, Doc. 2081415 (Oct. 22, 2024); *See* Fed. R. App. Proc. 28(i).

### 3. Respondent EPA's Proposed Word Limits and Rationale

Respondent EPA respectfully submits that the default word limits identified in Federal Rule of Appellate Procedure 32 and D.C. Circuit Rule 32 are appropriate, and that Industry Petitioners' request for enlarged briefs lacks merit.

Under Industry Petitioners' proposal, Industry Petitioners would be allowed 20,000 words for their principal brief, 9,100 words for their intervenor brief, and 10,000 words for their reply brief – providing a total of 39,100 words for Industry Petitioners alone.

---

[5] Comments of the Coke Oven Environmental Task Force, EPA-HQ-OAR-2002-0085-0967 (Oct. 2, 2023); Comments of SunCoke Energy, Inc., EPA-HQ-OAR-2002-0085-0968 (Oct. 2, 2023).

This Court has established word limits far below Industry Petitioners' proposal in recent cases involving multiple petitioner groups with multiple issues. For example, in *Kentucky v. EPA*, which involved eight petitions for review raising at least 11 unique issues (according to the petitioners' nonbinding statements of issues), the Court rejected the parties' request for 26,000 words and capped opening briefs at 21,000 words to be divided between up to two briefs. *Compare* Order, Case No. 24-1087, ECF No. 2065237 (July 17, 2024), *with* Joint Proposed Briefing Schedule and Format at 2, Case No. 24-1087, ECF No. 2062985 (July 3, 2024). In *American Petroleum Institute v. U.S. Department of Interior*, involving industry and environmental petitioners raising at least 11 unique issues (according to the petitioners' nonbinding statements of issues), the Court authorized 18,200 words to be shared between the industry and environmental petitioners at 9,100 words each. *Compare* Order, Case No. 24-1023, ECF No. 2056291 (May 24, 2024), *with* Joint Proposed Briefing Schedule and Format at 2-3, Case No. 24-1023, ECF No. 2054110 (May 13, 2024). And in *California Communities Against Toxics v. EPA*, this Court provided the petitioners 22,000 words to be shared between the industry and environmental petitioners. *Compare* Order, Case No. 24-1178, ECF No. 2073052 (Sept. 4, 2024), *with* Joint Motion to Set Briefing Format and Schedule, Case No. 24-1178, ECF No. 2070501 (Aug. 16, 2024).

Given this precedent, Industry Petitioners' request for enlarged briefs is unwarranted. Industry Petitioners raise many similar and overlapping issues. For instance, Petitioners American Coke and Coal Chemicals Institute's and Coke Oven Environmental Task Force's Issues 1 through 3 and 16 relate to Petitioner SunCoke Energy, Inc.'s, Issue 1. *Compare* Non-Binding Statement of Issues by Petitioners American Coke and Coal Chemicals Institute and the Coke Oven Environmental Task Force, ECF No. 2077503 (Sept. 30, 2024), *with* Petitioner SunCoke Energy, Inc.'s Statement of the Issues to be Raised, ECF No. 2077518 (Sept. 30, 2024). Further, American Coke and Coal Chemical Institute's and Coke Oven Environmental Task Force's Issues 4 through 8 raise issues similar to SunCoke Energy, Inc.'s, Issue 3. *Compare* Non-Binding Statement of Issues by Petitioners American Coke and Coal Chemicals Institute and the Coke Oven Environmental Task Force, ECF No. 2077503, *with* Petitioner SunCoke Energy, Inc.'s Statement of the Issues to be Raised, ECF No. 2077518.

EPA's proposal thus allows for ample briefing for all Parties; in addition to their opening and reply briefs, Industry Petitioners will also file an intervenor brief, providing them total of 28,600 words.[6]

---

[6] Should the Court provide Industry Petitioners more than the default word limit for their opening brief, EPA respectfully requests that the Court provide EPA with a commensurate increase. For example, if the Court provides Industry Petitioners

EPA thus proposes the following word limits:

| Filing | Word Limit |
|---|---|
| Industry Petitioners' Opening Brief | 13,000 |
| Coke Oven Community Petitioners' Opening Brief | 13,000 |
| Amicus Briefs supporting Petitioners | 6,500 |
| Respondent EPA's Brief | 26,000 |
| Industry Intervenors' Brief | 9,100 |
| Coke Oven Community Intervenors' Brief | 9,100 |
| Industry Petitioners' Reply Brief | 6,500 |
| Coke Oven Community Petitioners' Reply Brief | 6,500 |

## C.    Conclusion

For these reasons, the parties respectfully request that the Court enter an order setting the following briefing schedule in this matter. The alternative proposals on word limits are also set forth below.

| Filing | Briefing Schedule Due Dates | Industry Petitioners' Word Limit Proposal | Coke Oven Community Petitioners' and EPA's Word Limit Proposal |
|---|---|---|---|
| Petitioners' Opening Briefs | April 8, 2025 | 1 joint Industry Petitioners' brief of no more than 20,000 words; | 1 joint Industry Petitioners' brief of no more than 13,000 words; |

with 20,000 words, EPA would request a limit of 33,000 words for its Respondents' Brief. Industry Petitioners do not oppose this relief.

| | | | |
|---|---|---|---|
| | | 1 joint Coke Oven Community Petitioners' brief of no more than 13,000 words | 1 joint Coke Oven Community Petitioners' brief of no more than 13,000 words |
| Amicus Briefs supporting Petitioners | April 15, 2025 | 6,500 words | 6,500 words |
| Respondents' Brief | July 8, 2025 | 1 brief of no more than 33,000 words | 1 brief of no more than 26,000 words |
| Amicus Briefs supporting Respondents | July 15, 2025 | 6,500 words | 6,500 words |
| Respondent-Intervenors' Briefs | July 29, 2025 | 1 joint Industry Respondent-Intervenors' brief of no more than 9,100 words; 1 joint Coke Oven Community Respondent-Intervenors' brief of no more than 9,100 words | 1 joint Industry Respondent-Intervenors' brief of no more than 9,100 words; 1 joint Coke Oven Community Respondent-Intervenors' brief of no more than 9,100 words |
| Petitioners' Reply Briefs | August 19, 2025 | 1 joint Industry Petitioners' Brief of no more than 10,000 words; 1 joint Coke Oven Community Petitioners' brief of no more than 6,500 words | 1 joint Industry Petitioners' Brief of no more than 6,500 words; 1 joint Coke Oven Community Petitioners' brief of no more than 6,500 words |
| Deferred Joint Appendix | August 29, 2025 | | |

| Final Briefs | September 12, 2025 | | |
| --- | --- | --- | --- |

DATED: January 17, 2025

Respectfully submitted,

TODD KIM
Assistant Attorney General

*/s/ Albert Lin*
DANIEL J. MARTIN
ALBERT LIN
U.S. Department of Justice
Environmental Defense Section
P.O. Box 7611
Washington, D.C. 20044
Phone: (202) 307-1056
Email: Daniel.Martin3@usdoj.gov

*Counsel for Respondents*

OF COUNSEL:
ADAN SCHWARTZ
Environmental Protection Agency
Office of General Counsel
1200 Pennsylvania Avenue, N.W.
Washington, D.C. 20460

Jeffrey A. Knight
Pillsbury Winthrop Shaw Pittman LLP
1200 Seventeenth Street, NW
Washington, DC 20036-3006
(202) 663-9152
jeffrey.knight@pillsburylaw.com

*Counsel for ACCI and the COETF*

Tosh Sagar
Earthjustice
1001 G Street, NW, Suite 1000
Washington, DC 20001
(202) 667-4500
tsagar@earthjustice.org

*Counsel for GASP, Hoosier
Environmental Council, Just Transition
Northwest Indiana, PennFuture, and
Sierra Club*

Michael R. Huston
Perkins Coie LLP
2525 E. Camelback Road, Suite 500
Phoenix, AZ 85016-4227
(602) 351-8000
mhuston@perkinscoie.com

*Counsel for SunCoke Energy, Inc.*

Haley Lewis
Environmental Integrity Project
888 17th Street NW, Suite 810
Washington, DC 20006
(202) 263-4449
hlewis@environmentalintegrity.org

*Counsel for Clean Air Council and
PANIC*

## CERTIFICATE OF COMPLIANCE UNDER FED. R. APP. P. 27

I hereby certify on January 17, 2025, that this document complies with the type-volume limitation of Federal Rule of Appellate Procedure 27(d)(2)(A) because it contains 3,998 words, excluding those parts exempted by Rule 32(f).

This document complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5)(A) and the typeface style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word Times New Roman 14-point font.

*/s/ Albert Lin*
ALBERT LIN
*Counsel for Respondents*

## CERTIFICATE OF SERVICE

I hereby certify that on January 17, 2025, I electronically filed this document with the Clerk of the Court for the United States Court of Appeals for the District of Columbia Circuit by using the appellate CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

*/s/ Albert Lin*
ALBERT LIN
*Counsel for Respondents*